IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRENDA L. WATKINS, )
)
        Plaintiff, )
)
        v. ) 1:12CV1250
)
LINCOLN COMMUNITY HEALTH )
CENTER, INCORPORATED, )
)
        Defendant. )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Partial Motion to Dismiss [Doc. #13] filed by Defendant Lincoln Community Health Center, Incorporated ("Defendant" or "Lincoln"). In its Motion, Defendant moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss two claims raised by Plaintiff Brenda L. Watkins ("Plaintiff") in her Complaint. Specifically, Defendant moves to dismiss the claim set forth in "Count II" of the Complaint, wherein Plaintiff alleges a violation of the North Carolina Persons with Disabilities Protection Act ("NCPDPA"). In addition, Defendant moves to dismiss the claim set forth in "Count IV" of the Complaint, wherein Plaintiff alleges Intentional Infliction of Emotional Distress ("IIED").[1] This matter has been fully briefed by the parties and is now ready for the

---

[1] Plaintiff asserts a total of four (4) claims in her Complaint, each of which is labeled as a different "Count." In addition to the two claims Defendant seeks to dismiss by its present Motion, Plaintiff asserts the following claims: Count I: Violation of the Americans with Disabilities Act of 1990 ("ADA") and Count III: Violation of the Public Policy of North Carolina–Wrongful Termination/Age. Defendant does not presently seek to dismiss either of the claims set forth in "Count I" or "Count III."

Court's review. For the reasons set forth below, the Court will grant Defendant's Partial Motion to Dismiss and will dismiss Plaintiff's NCPDPA claim (Count II) and Plaintiff's IIED claim (Count IV) with prejudice.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Taking the allegations set forth in Plaintiff's Complaint as true, the facts of this case are as follows. Plaintiff began working at Lincoln Community Heath Center in 1989 as a Primary Care Assistant. Due to a change in state law, her position title later changed to Certified Nursing Assistant ("CNA"). In 2009, Lincoln began hiring employees to work as Certified Medical Assistants ("CMAs"), a majority of whom were under the age of forty (40) years old. Thereafter, in 2011, Lincoln implemented a new security measure which required personnel to have a key to access a doctor's assigned patient care area. Plaintiff alleges that she was "not given a key as all other newly hired medical staff were given." (Compl. ¶ 13). Also in 2011, Lincoln began assigning CNAs, including Plaintiff, a second doctor to assist, as compared to a single doctor in previous years, thereby increasing the CNAs' workload from twenty (20) patients per day to forty (40) patients per day. Furthermore, Plaintiff was allotted only fifteen (15) minutes to assist each of her patients. On May 6, 2011, Plaintiff's supervisor, Ms. Awanya Caesar, informed Plaintiff that her processing time for each patient was "extensive and need[ed] to be shortened." (Compl. ¶ 18). Plaintiff expressed her concern that a patient's assessment could not be done correctly within the fifteen minutes allotted. Thereafter, on August 1, 2011, Plaintiff received a written warning for spending more than the allotted time assisting patients. Plaintiff had never before received a warning from any of her supervisors. Plaintiff expressed

her concern that the workplace changes showed an "underlying motive on [the] part of the Defendant to get rid of the older CNAs and replace them with the newer CMAs." (Compl. ¶ 17).

On August 16, 2011, Plaintiff received an email from Edwina Gabriel, the Clinical Nurse Manager, informing Plaintiff that she would be spending August 17, 2011, through August 19, 2011, working at the homeless shelter clinic in order to ameliorate a staffing shortage. Upon her arrival at the homeless shelter, Plaintiff was instructed to do a number of tasks that Plaintiff believed she was not trained to do. As a result, Plaintiff informed her supervisor on August 18, 2011, that she was uncomfortable performing duties for which she had not been trained. Plaintiff, thereafter, was instructed to perform alternate duties at the homeless shelter. On August 25, 2011, Plaintiff received her second written warning for failing to adequately perform the duties assigned at the homeless shelter. In addition, Plaintiff received disciplinary actions in August of 2011 regarding certain scheduling issues.

On December 12, 2011, Plaintiff wrote a letter to Ms. Caesar informing her that Plaintiff needed to "slow down due to the burdensome work increase." (Compl. ¶ 27). Plaintiff included in her letter concerns that "patients at the center were not getting the care and service they deserved with the time restrictions and work load. Plaintiff further explained that this work increase led to errors in paperwork along with disabling physical conditions such as headaches, chest pains, and even blood pressure elevations for which Plaintiff had to begin taking medication." (Compl. ¶ 28). Thereafter, on December 15, 2011, Plaintiff suffered a panic attack at work and had to be hospitalized until December 18, 2011. Plaintiff alleges that the panic

3

Case 1:12-cv-01250-JAB-LPA   Document 19   Filed 05/23/13   Page 3 of 12

attack "was the result of a burdensome work environment and disabling health problems which arose due to her work environment." (Compl. ¶ 30). On January 5, 2012, Plaintiff was discharged from her employment at Lincoln and was told the reasons for her discharge were "overall poor work performance and having too many write-ups." (Compl. ¶ 31). Plaintiff alleges that Lincoln fabricated complaints against Plaintiff in order to force her out of a job. Presently, the position of CNA no longer exists at Lincoln.

Based on these allegations, Plaintiff filed her Complaint on October 22, 2012, in Durham County Superior Court, raising federal and state-law claims of disability discrimination, a state-law claim of wrongful termination, and a state-law claim of intentional infliction of emotional distress. Defendant timely removed the case to this Court and filed both its Answer and Partial Motion to Dismiss Plaintiff's NCPDPA claim (Count II) and Plaintiff's IIED claim (Count IV). The Court will address Defendant's Motion as to each claim separately.

II. COUNT II: VIOLATION OF THE NORTH CAROLINA PERSONS WITH DISABILITIES PROTECTION ACT ("NCPDPA")

In relevant part, the NCPDPA makes it unlawful for an employer "to discharge, or otherwise to discriminate against a qualified person with a disability on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment." N.C. Gen. Stat. § 168A-5(a)(1). In addition, where a "qualified person with a disability has requested an accommodation, or if a potential accommodation is obvious in the circumstances, an employer . . . shall investigate whether there are reasonable accommodations that can be made and make reasonable accommodations," as defined by statute. N.C. Gen. Stat. § 168A-4(b). In the present case, Plaintiff generally alleges that she is a "qualified person" with disabling

conditions including, headaches, chest pains, and blood pressure elevations, and that Defendant failed in its duty to provide Plaintiff with a reasonable accommodation after Plaintiff requested that she be allowed to "slow down" at work to accommodate her health conditions. Defendant moves to dismiss Plaintiff's NCPDPA claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). In support of its Motion, Defendant cites to Section 168A-11(c) of the North Carolina General Statutes, which limits jurisdiction over NCPDPA claims as follows:

> No court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under . . . the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., as amended, or federal regulations promulgated under that Act, involving or arising out of the facts and circumstances involved in the alleged discriminatory practice under this Chapter.

N.C. Gen. Stat. 168A-11(c); see Cone ex rel. Cone v. Randolph County Schs., 302 F. Supp. 2d 500, 514 (M.D.N.C.) (dismissing as a matter of law the plaintiff's NCPDPA claim which involved the same facts and circumstances as the plaintiff's claim under the Rehabilitation Act or ADA), aff'd, 103 Fed. App'x 731 (4th Cir. 2004). Defendant contends that Plaintiff's NCPDPA claim arises out of the same facts and circumstances as the claim set forth in "Count I," wherein Plaintiff alleges a violation of the Americans with Disabilities Act of 1990 ("ADA"). In her Response, Plaintiff, in essence, concedes, that the relevant law supports Defendant's arguments in favor of a Rule 12(b)(1) dismissal of her NCPDPA claim. (Pl.'s Resp. at 4 ("Plaintiff does not believe she can assert a counter-argument in good faith, and therefore, does not wish to impede on the Court's time nor waste additional resources.")). Based on the clear statutory language and supporting case law, and given Plaintiff's concession regarding the viability of her NCPDPA claim, the Court concludes that it lacks subject matter jurisdiction over

5

Plaintiff's NCPDPA claim because such claim involves the same facts and circumstances as Plaintiff's ADA claim (Count I). Therefore, the Court will grant Defendant's Motion as to Plaintiff's NCPDPA claim (Count II), and will dismiss that claim with prejudice.[2]

III.   COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")

Defendant also moves pursuant to Rule 12(b)(6) to dismiss Plaintiff's IIED claim (Count IV). In reviewing a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must "'take the facts in the light most favorable to the [non-moving party],' but '[it] need not accept the legal conclusions drawn from the facts,' and '[it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). The Supreme Court, in Ashcroft v. Iqbal, noted that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). In this regard, the Iqbal Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," but Rule 8 "does not unlock the doors of

---

[2] The Court notes that Defendant also moves to dismiss Plaintiff's NCPDPA claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. However, because the Court will dismiss Plaintiff's NCPDPA claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), it need not address Defendant's Rule 12(b)(6) contentions.

discovery for a plaintiff armed with nothing more than conclusions." Id. at 677-78, 678-79, 129 S. Ct. at 1949, 1950. Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 683, 129 S. Ct. at 1952 (internal quotation omitted)).[3]

To state a claim for IIED under North Carolina law, a plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Smith-Price v. Charter Behavioral Health Sys., 164

---

[3] In her Response, Plaintiff appears to contend that the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, as interpreted in Iqbal and Twombly, may not apply to Plaintiff's Complaint since this case was removed from state court rather than filed initially in federal court. However, Plaintiff does not provide any support for her position and, further, does not specify what pleading standards otherwise should apply to her Complaint in this case. In any event, Rule 81(c) of the Federal Rules of Civil Procedure expressly states that the Federal Rules, including Rule 8, apply to actions removed from state court. See Fed. R. Civ. P. 81(c)(1); Sellers v. South Carolina Autism Soc'y, Inc., No. 3:11-2163-CMC-JRM, 2012 WL 1015807, at *2 (D.S.C. Feb. 22, 2012) (noting that pursuant to Rule 81(c) "the Federal Rules of Civil Procedure govern the procedural law and South Carolina 'pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law'" (citation omitted)); see also Christiansen v. West Branch Community School District, 674 F.3d 927, 938-39 (8th Cir. 2012) (discussing the application of Iqbal and Twombly to cases removed from state court and noting that "[b]y including federal claims in his state-court complaint, '[plaintiff] subjected himself to the possibility that the defendants would remove the case to federal court'" (citation omitted)). Therefore, the Court will review Plaintiff's IIED claim pursuant to the pleading standards set forth above.

N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (internal quotations and citations omitted). Allegations of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," will not suffice. Briggs v. Rosenthal, 73 N.C. App. 672, 678, 327 S.E.2d 308, 311 (1985) (citation and quotations omitted). Whether or not the conduct alleged is sufficiently "extreme and outrageous" is, initially, a question of law for the Court. Simmons v. Chemol Corp., 137 N.C. App. 319, 325, 528 S.E.2d 368, 373 (2000). In North Carolina, "courts rarely 'find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress.'" Smith v. Computer Task Grp., Inc., 568 F. Supp. 2d 603, 621 (M.D.N.C. 2008) (quoting Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000), and collecting cases); Faulkner v. Tyco Electronics Corp., 552 F. Supp. 2d 546, 558 (M.D.N.C. 2008) ("North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context." (quotations and citations omitted)). Acts of discrimination, and even "termination, allegedly in violation of federal law alone, [do] not necessarily constitute extreme and outrageous conduct under North Carolina law." Faulkner, 552 F. Supp. 2d at 558 (quotations and citation omitted).

In the present case, Defendant contends that given the employment context in which Plaintiff bases her allegations, Plaintiff has failed to allege any conduct rising to the level of "extreme and outrageous" under North Carolina law. In response, Plaintiff concedes that IIED claims rarely succeed in the employment context, but notes that North Carolina courts do permit claims of IIED to proceed when such claims are based on allegations of sexual harassment. See generally, Bryant v. Thalhimer Bros., Inc., 113 N.C. App. 1, 437 S.E.2d 519

8

(1993) (finding sufficient evidence of "extreme and outrageous" conduct where the defendant made sexually explicit comments to the plaintiff and engaged in unwanted sexual touching and advances over a period of time). Based on the manner in which North Carolina courts have treated sexual harassment cases, Plaintiff contends that "an argument can be made that this policy should extend not only to sexual harassment, but also to harassing behavior in general." (Pl.'s Resp. at 7-8). With regard to her specific allegations, Plaintiff contends that the sudden onset of disciplinary actions after over twenty years of service, the failure to provide Plaintiff with a key to locked areas of the facility, and the "perpetual fear" of losing her job purportedly imparted by Defendant's alleged actions in this case "should be considered a form of harassing behavior" that rises to the level of "extreme and outrageous" conduct. (Pl.'s Resp. at 8). Plaintiff further contends that should the Court grant Defendant's Motion and dismiss her IIED claim, "[t]he Court would effectively be acknowledging that harassing behavior that falls short of sexual harassment is indeed tolerable in a civilized community." (Pl.'s Resp. at 9).

In considering the parties' contentions, the Court finds that, based on North Carolina law regarding IIED claims in the employment context, Plaintiff has failed to allege any conduct that is sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress. Compare Brown v. Burlington Indus., Inc., 93 N.C. App. 431, 432, 435-36, 378 S.E.2d 232, 233, 234-35 (1989) (finding alleged conduct extreme and outrageous when employee's supervisor made sexually explicit remarks and gestures two to three times a week over an extended period of time), Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 490, 492-93, 340 S.E.2d 116, 121, 122 (1986) (finding alleged conduct extreme and outrageous when

9

supervisor engaged in unwanted sexual touching of plaintiff, screamed profanities at her when she refused his advances, threatened her with bodily injury, and pulled a knife on her), and Tate v. First-Citizens Bank & Trust Co., No. 5:07-CV-492-BO, 2009 WL 959971, at * 6-7 (E.D.N.C. Apr. 8, 2009) (permitting IIED to proceed where the plaintiff alleged that her supervisor "made sexually suggestive movements over an extended period of time and unapologetically physically touched Plaintiff in a sexual manner multiple times"), with Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810-11 (M.D.N.C. 1999) (finding conduct not extreme or outrageous when employee was told he was "too old and sick" to handle his job and was allegedly terminated in violation of federal and state discrimination laws), Pardasani v. Rack Room Shoes Inc., 912 F. Supp. 187, 192 (M.D.N.C. 1996) (finding conduct not extreme and outrageous when plaintiff alleged he was given poor performance evaluations, denied promotions available to others, excluded from training, and finally terminated from his employment), and Locklear v. Person County Bd. of Educ., No. 1:05CV00255, 2006 WL 1743460, at *16 (M.D.N.C. June 22, 2006) (finding conduct not extreme and outrageous where employer referred to the plaintiff as "domineering" and tied that statement to the fact that the plaintiff is a Native American, rescinded a four-year contract in favor of a two-year extension, and threatened the plaintiff with a "public investigation" over cheating allegations that led to the plaintiff's resignation). In so finding, the Court notes that Plaintiff provides no legal support for her position that this Court should, or even could, include allegations of purported harassment, generally, in the same category as allegations of sexual harassment for purposes of evaluating an IIED claim in the employment context. In that regard, the Court notes that North Carolina courts have found

10

Case 1:12-cv-01250-JAB-LPA   Document 19   Filed 05/23/13   Page 10 of 12

certain sexual harassment cases to comprise a seemingly narrow exception to the general rule that North Carolina courts rarely find conduct in the employment context sufficiently "extreme and outrageous" to support an IIED claim. Adopting Plaintiff's position in this case would require the Court to impermissibly expand North Carolina law in a manner not contemplated by North Carolina courts. See Jolly v. Academy Collection Serv., Inc., 400 F. Supp. 2d 851 (M.D.N.C. 2005) ("[T]he federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law."). Therefore, the Court finds Plaintiff's arguments in favor of finding "extreme and outrageous" conduct in this case to be without merit.

Furthermore, the Court finds that Plaintiff overstates the implication of granting a dismissal of her IIED claim by arguing that, in granting such a dismissal, the Court effectively acknowledges that Defendant's alleged conduct in this case is "tolerable" in civilized society. To that point, the Court notes that certain conduct alleged in Plaintiff's complaint, if it occurred, may in fact be objectionable, and the Court does not condone that conduct by rendering its decision in this matter. Rather, the Court merely concludes that the conduct alleged in this case does not rise to the level of "extreme and outrageous" conduct as is required under North Carolina law. Therefore, the Court will grant Defendant's Motion as to Plaintiff's IIED claim (Count IV), and will dismiss that claim with prejudice.

IV. CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendant's Partial Motion to Dismiss [Doc. #13] is hereby GRANTED as set forth herein. IT IS FURTHER ORDERED that

Plaintiff's North Carolina Persons with Disabilities Protection Act claim (Count II) and Plaintiff's Intentional Infliction of Emotional Distress claim (Count IV) are hereby DISMISSED WITH PREJUDICE.

This, the 23rd day of May.

                                                                                     */s/ James A. Beaty, Jr.*
                                                                                            United States District Judge